PER CURIAM.
The Department of Highway Safety and Motor Vehicles petitions this court for a writ of certiorari to review an order of the circuit court reinstating the driving privileges of the respondent, Hampton Bell.
Bell was arrested for driving under the influence of alcohol in January 1985. Following his arrest he refused to submit to a chemical blood alcohol test. Section 322.-261(1), Florida Statutes (1985) requires the Department to suspend the license of any person who refuses an officer’s request to submit to such a test, upon receipt of the officer’s sworn statement that he had reasonable cause to believe the person was driving under the influence and that the person refused the test. The period of such suspension is set at six months, unless the person’s driving privileges have previously been suspended for refusing a chemical test, in which case the suspension shall be for one year. Accordingly, the Department informed Bell by letter that his driver’s license would be suspended.
Pursuant to section 322.261(3) Bell made a timely request for an implied consent hearing. At this hearing the county court found that the arresting officer had failed to apprise Bell that a second refusal would subject his license to the enhanced suspension period set forth in section 322.261(1) and so sustained the suspension of Bell’s license for six months only. Neither party appealed this ruling. Records of the Department revealed that Bell’s license had previously been suspended when, in 1976, he had also refused a chemical test. Thus the Department, based on its records revealing a total of two refusals, persisted in suspending the license for one year.
The circuit court, reviewing the Department’s order by certiorari as authorized in section 322.31, Florida Statutes (1985), adopted the county court’s findings of fact and held that Bell’s refusal was “legally defective” and thus that Bell “is not subject to any suspension of his license and driving privileges” (emphasis added). For the reasons discussed herein we hold that the circuit court correctly quashed the order of the Department, but that the court exceeded its authority when it concluded that Bell was subject to no penalty at all for his refusal to take the chemical test.
The Department argues that the county court, upon Bell’s request for an implied consent hearing, had but one determination to make: whether Bell was adequately apprised that his license would be suspended for refusing to submit to a chemical test. Having found against Bell, the county court should have no additional authority to determine the length of the resulting suspension because, by statute, this determination is left to the Department based on the driver’s record of prior refusals. The Department cites our recent opinion in State of Florida, Department of Highway Safety & Motor Vehicles v. Vogt, 489 So.2d 1168 (Fla.2d DCA 1986), wherein we distinguished between criminal penalties and administrative sanctions, such as suspension when prior DUI convictions are attacked as *474 constitutionally infirm, and stated that “the judge of the county court had no authority to make a determination binding on the Department that Vogt’s current conviction must be considered his first conviction for purposes of determining the length of his driver’s license revocation.” Vogt, 489 So.2d at 1171.
We believe the Department’s reliance upon Vogt is misplaced. Initially, we note that the holding in Vogt might have been different had the county court vacated Vogt’s prior convictions rather than simply refused to consider them for purposes of enhancing Vogt’s present sentence. Once a criminal traffic conviction ceases to exist, whether by appellate reversal or pursuant to the procedures set forth in Florida Rule of Criminal Procedure 3.850, there is no authority for the Department to continue to acknowledge that conviction when determining appropriate administrative sanctions such as license suspension. Furthermore, the issue actually presented in Vogt was whether a county court, having ordered a six-month suspension of a driver’s license, had the power to hold the Department in contempt for failing to return the license after that time.
We also distinguish Vogt as involving a different mechanism for license suspension than does the present case. Essentially, there are three different methods by which this suspension procedure may be set into motion. First, the mandatory suspension which follows a conviction for driving under the influence of alcohol or certain other enumerated offenses or upon an adjudication of incompetency is dependent upon prior judicial action, namely, a conviction or adjudication in a court of law. Whenever a person is convicted of any offense requiring a mandatory license suspension or is adjudicated incompetent, the court wherein the conviction or adjudication takes place must require the surrender of the defendant’s license and forward it to the Department along with a record of the conviction. §§ 322.25(1), 322.2505, 322.26, Fla.Stat. (1985).
Second, the Department may in certain situations suspend a license sua sponte based upon its records. An example of this is the suspension upon a finding that a person has become a “habitual traffic offender” as defined in section 322.264, Florida Statutes (1985). While in this particular example judicial action is also a prerequisite (the convictions must first take place), the determination that a certain number of convictions has occurred during a certain period of time is an independent calculation made by the Department. Review of a decision to suspend a habitual offender’s license is limited to whether the pattern of convictions meets the statutory requirement; the validity of those convictions is not at issue. State, Department of Highway Safety & Motor Vehicles, Division of Driver Licenses v. Purdum, 400 So.2d 1050 (Fla.2d DCA 1981); Wheeler v. Department of Highway Safety & Motor Vehicles, 297 So.2d 128 (Fla.2d DCA 1974).
Third, there is the hybrid procedure involved in the present case whereby the Department initiates the suspension based upon notification that a driver has refused a chemical blood alcohol test, but where the fact-finding responsibility is thereafter delegated to the courts. Though section 322.-261(3) speaks of “the court having trial jurisdiction of the offense for which [the licensee] stands charged,” it is clear from the statute that neither a DUI conviction nor even the instigation of charges is a prerequisite for suspending a license because of a refusal to submit to chemical testing.
The role of the court is different in the present situation than in Vogt. Whereas convictions are merely reported to the Department for whatever proceedings they deem appropriate, here it is the department’s action (notification to the licensee that his license is to be suspended) which triggers the jurisdiction of the court[1]. We *475 interpret section 322.261(3) as affording the court broader fact-finding powers than the Department would suggest.
Taken as a whole, the statute manifests a legislative intent that a failure to inform a driver of the consequence of refusing to submit to testing will simply afford the driver an escape from suspension of driving privileges, should he, in fact, face such suspension by virtue of having refused testing.
State v. Gunn, 408 So.2d 647, 649 (Fla. 4th DCA 1981). If the court finds that the suspension is lawful and should be sustained, the person’s driving privileges shall be suspended “by order of the court.” § 322.261(5), Fla.Stat. (1985).
One of the determinative issues specifically set forth in the statute is “[w]hether the person had been told that, if he refused to submit to such test, his privilege to operate a motor vehicle would be suspended for a period of 6 months, or for a period of one year if his driving privilege had been previously suspended for a refusal to submit to such test.” § 322.261(3)(d), Fla.Stat. (1985). There is no reasonable construction of this provision except that the legislature intended a basic warning that a refusal to submit to a chemical test would result in a six-month suspension and an additional warning of enhanced penalties for repeat refusals. In the present case the county court found that the officer’s warning to Bell was only partially adequate, sufficient to sustain only the minimum suspension period. This represents a middle ground between the position taken by the Department (any warning, if valid at all, supports suspension in accordance with departmental records) and the circuit court (warnings are either totally valid or totally invalid). We believe this finding, while not specifically mentioned in the statute, is one of three options available to the court considering a case such as Bell’s where a second refusal is involved. The court could have found the officer’s warning totally insufficient, in which case no suspension at all would be permitted. The court could have determined that Bell received a complete warning, including enhanced penalties for multiple refusals, in which case the Department would have been required to suspend Bell’s license for a year. Finally, the court could do just what it did and find that Bell should be subject to no more stringent sanction than that about which he was adequately apprised.
Because an implied consent proceeding technically is not dependent upon the state’s decision to charge the licensee with DUI, the next question is whether the findings and decision of the county court represent a final order which should be appealed by the aggrieved party. A final judgment is one which disposes of all pending issues in a case, such that nothing more remains to be done. State ex rel. Everette v. Pette-way, 131 Fla. 516, 179 So. 666 (1938). The use of the phrase “by order of the court” strongly implies that where a licensee requests an implied consent hearing the ultimate decision to suspend a license rests with the court. To hold otherwise would relegate the county court to the status of a mere agent of the department, with only advisory duties, and would raise serious questions regarding the separation of powers. The legislature has given the Department no discretion to suspend or refuse to suspend a license in contravention of the court’s findings. Thus, we believe the county court’s order in the present case does represent a final order. Bell should have appealed that order if he was unwilling to accept the six months’ suspension it provided, and the state should have appealed if they believed the facts of the case required a suspension for the full year. The six-month suspension became final upon the failure of either party to challenge it by appeal. For this reason the circuit court erred in requiring no suspension of Bell’s license but correctly overruled the Department’s attempt to suspend the license for a full year.
*476 The petition for writ of certiorari is granted in part and denied in part, and this case is remanded for proceedings consistent herewith.
CAMPBELL, A.C.J., and SCHOONOVER and HALL, JJ., concur.

. The law provides for license suspension in some cases cognizable in circuit court. See, e.g., § 322.26(3) and (4), Fla.Stat. (1985). However, where no such charges have been formally brought, and the accused has also refused to submit to a chemical test, it would appear that jurisdiction to conduct an implied consent hearing would lie in the county court, which would *475 also act as committing magistrate over the accused until felony charges were filed. For the purposes of this opinion we will assume that most implied consent hearings will occur before county judges.